### THE E. F. MORAN, JR.
### THE SOCONY NO. 5.
### THE SOCONY NO. 19.
### THE CATTLE FLOAT NO. 106.
### THE BARGE SOCONY NO. 88.

District Court, S. D. New York.

June 9, 1947.

Burlingham, Veeder, Clark & Hupper, by Chauncey I. Clark and Charles E. Wythe, all of New York City, for libellant the Junior Moran.

Bigham, Englar, Jones & Houston, by Charles Van Hagen, all of New York City, for Central Union Stockyards Co.

Macklin, Brown, Lenahan & Speer, by Paul Speer and John W. Knox, all of New York City, for Socony Vacuum Oil Co.

RIFKIND, District Judge.

The findings sufficiently describe the circumstances attending the collision in the East River, on November 26, 1943, between the tug E. F. Moran, Jr., and the oil barge Socony No. 88 as a result of which the tug, the barge and a cattle float, No. 106, were damaged.

Moran first presented its case on the theory that prudent navigation demanded a starboard to starboard passage. It abandoned that position in the brief filed after trial and agreed that a port to port passage was indicated.

The Socony flotilla, headed up river, was starboard of mid-channel and the Moran was nearer the Manhattan shore than the Socony. Indeed, the Socony had safely passed another flotilla, in whose wake the Moran was following, by a port to port passage. Had the Moran adhered to its course down the river there would have been no collision. The suggestion that Socony crossed the bow of the Moran and then inexplicably altered its course to starboard to collide with the 88 seems quite fantastic. It is contradicted by the dis-

interested testimony of several witnesses who were in excellent position to observe the event. Relying most heavily, therefore, upon the testimony of the disinterested witnesses, both as to the movement of the vessels and as to the signals, I come to the conclusion that the navigational fault lay exclusively with the Moran. Dated, New York, N. Y., June 9, 1947.

The above entitled libels having been consolidated for trial and having duly come on for trial on the pleadings and proofs of the respective parties, the court makes its findings of fact and states its conclusions of law, as follows:

## Findings of Fact.

1. Libellant, Tug Moran, Inc., is the owner of the steamtug E. F. Moran, Jr.

2. Cross-libellant Socony Vacuum Oil Co. is the owner of the steamtugs Socony No. 5 and Socony No. 19.

3. Libellant Central Union Stockyards Co. is the owner of the cattle float No. 106.

4. At about 7:15 P.M. of November 26, 1943, the tug E. F. Moran, Jr., with cattle float No. 106 in tow on her port side, was bound from 45th Street, East River, to Jersey City. The tug E. F. Moran, Jr., was of 656 horse power. The cattle float No. 106 was 240 feet long and 50 feet high above the water and considerably longer than the tug. The float was light. The navigator in the pilot house of the Moran was not able to see over the float. A licensed pilot rode on the top of the float forward, directing the navigation.

5. The Socony flotilla consisted of the tank barge Socony No. 88, which was being towed in between steamtug Socony No. 19 on its port side aft and Socony No. 5 on its starboard side aft. The barge was 250 feet long. The tugs were between 100 and 105 feet long. The Socony No. 19 was of 650 h. p. and the No. 5 of 850 h. p. The flotilla was on a voyage from Staten Island to Newton Creek. The No. 88, which extended considerably forward beyond the bow of the tugs, was loaded with crude oil. The master of the No. 19 had an unobstructed view on his port side, was unable to see at most angles on the starboard side. The reverse was true in the case of the master of the Socony No. 5. A lookout was posted on the bow of the No. 88 in the forecastle head. The master of the No. 19 was in charge of the flotilla.

6. Proper lights were displayed on both flotillas.

7. The night was dark; visibility was good; there was little or no wind; the tide was at flood.

8. The speed of the Moran flotilla against the flood tide was about two knots. The speed of the Socony flotilla with the tide was about seven knots.

9. The lookout on the Socony flotilla first observed the Moran flotilla when the Socony flotilla was opposite piers 3 and 4, Brooklyn and a little to the right of mid-channel. He first observed it less than a point off the port bow and it showed a red light. At that time the Moran flotilla was approximately near piers 27 and 28, Manhattan, above the Brooklyn Bridge and seemed to be coming down along the Manhattan shore. It appeared to him that the flotillas could pass each other safely port to port.

10. The lookout on the Socony then observed the red light of the Moran flotilla and the tug's staff lights close in, indicating to him that the Moran was putting its helm to port. Upon the direction of the lookout, the No. 19 blew a one whistle blast and after awhile when no reply was received, the signal was repeated. No reply was received from the Moran.

11. At the time of the giving of the second one blast signal the green light of the Moran became visible to the Socony, indicating that the Moran flotilla was still swinging to port.

12. The No. 19 thereupon blew the danger signal and the Socony tugs went full astern for one or one and one-half minutes, to avoid contact with the Moran flotilla. When a collision seemed inevitable the No. 5 went full ahead with a hard left rudder while the No. 19 continued to go astern in order to render the inevitable blow a glancing one.

13. The Socony flotilla cleared the cattle float but the starboard bow of the Socony No. 88 collided with the tug Moran

in the vicinity of its starboard side bitt causing damage to both.

14. The collision occurred to the right of mid-channel 100 feet or more north of the Brooklyn Bridge.

15. From below the Brooklyn Bridge up to a short distance above the Bridge the tide sets strongly toward the Manhattan shore.

16. In the vicinity of the Brooklyn Bridge there is a bend in the river which makes it necessary for craft going downstream to alter course somewhat to port in order to maintain the same distance from pier ends. Likewise craft going upstream have to change their course somewhat to starboard.

17. As a result of the collision the cattle float was parted from the Moran and damaged.

### Conclusions of Law.

1. The collision and the consequent damage were due to the fault of the tug Moran and not to the fault of the Socony flotilla nor of the cattle float No. 106.

2. Cross libellants Socony Vacuum Oil Co. is entitled to an interlocutory decree against tug Moran.

3. The libel of libellant Central Union Stockyards Company against Socony No. 5 and Socony No. 19 is dismissed. Said libellant is entitled to an interlocutory decree against the Moran.

4. The libel of the libellant Tug Moran, Jr., Inc., against Tug Socony No. 5 and Socony No. 19 is dismissed.